GARDINER GREENE, TRUSTEE, *vs.* ANNIE E. HUNTINGTON ET AL.

Second Judicial District, Norwich, May Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A power given by a testator in his will to his executors, to determine all questions as to its meaning or construction, passes to the surviving executors, whose decision, unless involving a clear abuse of power, binds all parties interested.

No conveyance by the testamentary trustee is necessary to perfect the

title to an equitable remainder in fee which vested in the remainder-man at the testator's death, although during the donee's lifetime the land was in possession of the trustee, as its legal owner, for the purpose of fulfilling the trust.

General Statutes, § 618, which gives a widow dower in one-third part of the real estate of which her husband "died possessed in his own right," embraces equitable remainders in fee, although the possession may be held in trust.

A testator gave certain property in trust to pay the income to *M* during her life and then to convey the trust fund to "her legal representatives." The testator had previously used this term to describe, not executors and administrators, but those who were to take for their own benefit. *Held* that the term should receive the same meaning in this connection, *viz.* those who would on *M*'s death succeed by law, as her next of kin, to the beneficial interest in her intestate estate; and that in order to sustain the validity of this bequest in view of the then existing statute of perpetuities, the expression might properly be held to apply to those answering this description at the death of the testator rather than at *M*'s decease.

Rents and dividends from savings banks constituting part of the income of a trust fund and received since the death of the life tenant, are not apportionable in favor of his estate.

Argued May 30th—decided July 13th, 1900.

SUIT to determine the construction and validity of the will of Jedediah Huntington of Norwich, deceased, brought to the Superior Court in New London County and reserved by that court, *Thayer, J.,* upon the allegations of the complaint, for the consideration and advice of this court.

The 4th section of the will gave two thirds of certain real estate in Norwich, known as the Central Wharf property, to the testator's grand nephews, Jedediah and John R. Huntington, in fee simple, and the rents of one third of it to their mother, Mary Huntington, during her life, and, at her decease, devised said third to her said two sons in fee simple, "thus making the said Jedediah and John R., at the decease of their mother, sole owners of said estate."

The 5th section gave pecuniary legacies to a number of different persons, and "in case any of them should die before I do, to the legal representatives of such deceased."

The 15th, 16th and 17th sections were as follows: " *Fifteenth.* I give, devise and bequeath all the residue of my es-

tate to the devisees and legatees named in the second, third, fourth and fifth sections or clauses of this will, and direct the same to be divided between said devisees and legatees, in the same proportion as the devises and bequests are made to them in said sections and clauses.

" *Sixteenth.* I authorize and empower my executors to sell any portion of my property, at public or private sale at their discretion, in case they shall deem it necessary so to do, to better carry into effect the provisions of this will.

" *Seventeenth.* Should any informality appear or questions arise as to the meaning or legal construction of this instrument, I hereby direct that the distribution of my estate shall be made to such persons and associations as my executors shall determine to be my intended legatees and devisees, and their construction of my will shall be binding upon all parties interested."

A codicil contained the following provision :—

" *Second.* The fourth section of said will is hereby revoked, and the following provisions are made in lieu thereof, to wit: 1. I give, devise and bequeath one undivided third part of all my property on Central Wharf in the city of Norwich, consisting of one acre of land with the buildings thereon standing, to Jedediah Huntington, the eldest son of my deceased nephew, his heirs and assigns forever.

"2. I give, devise and bequeath the other undivided two thirds of my said property on Central Wharf to John T. Wait, and James A. Hovey, and the survivor of them in fee, upon trust to pay over one half of the net income, rents and profits thereof as they shall accrue, to Mary the widow of the said John G. Huntington, during her natural life, and to apply the other half of the said net income, rents and profits, or such portion thereof as the said trustees shall deem necessary to the maintenance and support of the said John R. Huntington, during his natural life, and after the death of the said Mary, to convey one undivided fourth part of the said trust estate in fee to Jedediah Huntington, the eldest son of my deceased nephew, or to his legal representatives, and to apply the net income, rents and profits of the remain-

ing undivided three fourths of said trust estate, or such portion thereof as they shall deem necessary, to the maintenance and support of the said John R. Huntington, during his natural life, and upon the death of the said John R., to convey the said undivided three fourths of said trust estate, in fee, to Jedediah Huntington, if living, or, if he is dead then to his legal representatives.

" *Third.* Whereas, by my said will bearing date, the 26th day of April, A. D. 1871, I gave and bequeathed a portion of my residuary estate to the said Mary Huntington : I now desire to change my will in that respect, so as to give, and I do hereby give that portion of said residuary estate to said John T. Wait and James A. Hovey, and the survivor of them, upon trust, to pay the net income and profits of said portion as they shall accrue, to the said Mary during her natural life, and upon her death, to convey the trust fund to her legal representatives."

The testator died in 1872, John R. Huntington in 1884, and Mary Huntington in 1898. Jedediah died in 1885, intestate, leaving a widow and children. In 1888, at the request of the latter, the surviving executors undertook to determine a question which had arisen as to the construction of the codicil, and, by a paper duly signed and recorded in the probate records, declared the legal meaning of the second clause of the second section thereof to be that the undivided two thirds of the Central Wharf property, devised by said clause to trustees, " should vest, and that the same did vest, upon the death of the said John R. Huntington, in Jedediah Huntington, the eldest son of the said John G. Huntington, subject to the title of the trustees under the provisions of said clause, and to the trust for the payment of one half of the net income, rents, and profits of said estate, as they shall accrue, to the said Mary Huntington during her natural life, as in said clause is expressed."

The plaintiff holds in trust two thirds of the Central Wharf property, which is let at an annual rent of $800, and also deposits in several savings banks, representing the share of the residue of the estate set to trustees under the third section of

the codicil. All income received up to October 1st, 1898, has been duly paid to the proper beneficiaries. Mary Huntington died October 26th, 1898. Since October 1st, 1898, the plaintiff has received a quarter's rent ($200) to December 31st, 1898, and certain dividends from savings banks declared for periods of six months ending after October 26th, 1898.

Mrs. Mary Huntington died in debt for the expenses of her last illness, and left no property, apart from her interest, if any, in said trust estate. The questions as to which the plaintiff sought a construction of the will were as follows:—

" 1. Is the aforesaid construction of the second paragraph of the second section of said codicil, made by two of said executors, valid and conclusive? 2. What is the duty of the trustee as to the conveyance by him of said undivided two-thirds of said wharf property? To what persons should the same be conveyed, and what interests therein should be conveyed to such persons respectively? What should be the form of such conveyance? 3. As to the trust funds held under said third section of said codicil, what is the meaning of the expression, 'her legal representatives?' 4. If the trust funds under said third section should be paid to the families of the deceased sons of said Mary, do the widows of said sons take anything? Is the division between the descendants of said Mary to be *per capita* or *per stirpes*? 5. Is the estate of said Mary Huntington entitled to apportionment of the income of said trust fund, and if so to what payment is her administrator entitled? 6. In case of any portion of the trust estate being payable to the residuary legatees under the will, what is the meaning of the expression 'the legal representatives of such deceased' in the fifth section of the will? 7. In case any of the legacies or devises of the will are wholly or partly void by the law of perpetuities, or otherwise, what persons take the property covered by such legacies or devises, and in what shares?"

*Wallace S. Allis*, for Annie R. Dahlgren et al.

*Amos A. Browning*, for Lillian Huntington et al.

*Solomon Lucas*, for Annie E. Huntington et al.

*Charles F. Thayer*, for estate of Mary Huntington.

BALDWIN, J. It was determined in a previous action brought for a judicial construction of this will, that the proper tribunal to which to resort for determining its meaning was that which the testator had himself created for that purpose. *Wait* v. *Huntington*, 40 Conn. 9, 11. The sixteenth section gave the executors a general power of sale, at their discretion. The seventeenth conferred the power now under consideration. The former unquestionably passed with the office, upon the death of Jedediah Huntington, to the surviving executors. The same rule must apply to the latter. The construction given in 1888 to the second clause of the second section of the codicil by the two executors then surviving, must therefore stand as binding upon all parties interested, unless in reaching it there was a clear abuse of power. *Wait* v. *Huntington, supra; Pray* v. *Belt*, 1 Pet. 670, 680.

The object of the second section of the codicil was to vest the ultimate ownership of the Central Wharf property in Jedediah Huntington or those who should represent him. The trustees were, after the death of his mother, " to convey one undivided fourth part of the said trust estate in fee to Jedediah Huntington, the eldest son of my deceased nephew, or to his legal representatives." There are no direct words of gift as respects the fee of this land, except that of the legal estate to the trustees. As they, however, took a legal estate only, the beneficial estate should be construed as vesting as of right, at the testator's decease, in those to whom it was to be ultimately conveyed, if the words of the testator may reasonably bear such an interpretation. A devise to *A* or his heirs is, in legal effect, a devise to *A* if he be living at the decease of the testator, but if he be not then living, to those who then may be his heirs. The term " legal representatives " had been previously used in the fifth section of the will, in the provision against the lapse of any of the pe-

cuniary legacies therein given. It is plain that, as thus used, it meant not executors or administrators, who might under certain circumstances represent only creditors, but those who would take for their own benefit. The term *prima facie* should receive the same interpretation when repeated in the codicil, and this presumption is strengthened from the fact that it is to these legal representatives that the land is to be conveyed in fee. To direct such a conveyance to an executor or administrator would be unusual, and, under most circumstances, inappropriate. If, therefore, this provision of the codicil stood alone, Jedediah would have taken at the testator's decease an equitable fee in a fourth of the wharf property, subject to the life interest in favor of his mother.

As to the conveyance of the other three fourths, the direction is somewhat different. It is, upon the death of his brother John, to be conveyed in fee "to Jedediah Huntington, if living, or if he is dead then to his legal representatives." Taken by themselves alone, these words would point strongly to the conclusion that unless he should survive John, his representatives were to be the grantees, and so the ultimate beneficiaries in remainder. But it is highly improbable that the testator contemplated a division of the property, by which upon his decease one fourth should go to Jedediah and at a later period the other three fourths to his representatives. To avoid such a result, each of these provisions must be construed in the same way. The executors so construed them as to make the former control, as respects the nature of the beneficial title in remainder after the death of John R. Huntington. If it became vested in Jedediah at the testator's decease, it was certainly vested in him at the decease of his brother. To read the devise to him as absolute, in case he survived the testator, was, to say the least, not an inadmissible construction of it, and the determination of the executors (which may fairly be rested upon this position) therefore bound all parties in interest.

Upon the death of Jedediah, this remainder became part of his estate, and no conveyance by the trustee was or is necessary to perfect the title; but there would be no impro-

priety in his executing release deeds in favor of those who have succeeded to the interest of the decedent.

His widow, under our statute, had right of dower in one third part of the real estate of which he " died possessed in his own right." General Statutes, § 618. He was, when he died, the owner of an equitable remainder in fee in the wharf property, in his own right. A reversioner in fee subject to an estate for life is said to be seized of the reversion of the tenements as of fee and right. 2 Wash. on Rl. Prop. *391. He who owns a vested remainder in fee holds equally in his own right. The remainder vested in Jedediah Huntington was only an equitable one, and the land was in the possession of the legal owner. But this possession was for the purpose of protecting and managing the property for the ultimate benefit of the remainder-man, as well as for the present benefit of the life tenant.

Dower is an estate favored by the law. The common law of England favored it by establishing the right of the widow in lands held by her husband as a trustee. A different rule was adopted in Connecticut by allowing her to resort only to lands held by her husband " in his own right." *Fish* v. *Fish*, 1 Conn. 559; *Goddard* v. *Prentice*, 17 id. 546, 555. The same considerations which led us to construe the statute as embracing equities of redemption require that it should be read as including equitable remainders in fee, although the possession may be held in trust. The land in such a case is substantially the husband's, and the possession may fairly be deemed to be held for him. 1 Perry on Trusts, § 324; *Hemingway* v. *Hemingway*, 22 Conn. 462, 472. The term " possessed " in our statute is more comprehensive than the word " seized " which is employed in those of some other States, the courts of which have felt bound to exclude dower in equitable estates. *Reed* v. *Whitney*, 7 Gray, 533, 536; *Todd* v. *Oviatt*, 58 Conn. 174, 190.

The widow of Jedediah Huntington therefore was entitled to dower in the wharf property, subject to the paramount title of the trustee for the purposes of the trust.

The term " legal representatives " in the third section of

the codicil must receive the same meaning already attributed to it when previously used by the testator, in so far as to take it as descriptive of those who would, upon Mary Huntington's decease, succeed by law, as her next of kin, to the beneficial interest in her intestate estate. We think that it may also be properly held to refer to those answering this description, not at the time of her death but at that of the testator. This conclusion is supported by the rule that the law favors vested estates, coupled with the fact that there are here no direct words of gift, and by the principle that the testator is not to be presumed to have intended an illegal disposition of his property. Under the statute against perpetuities, which was in force when he died (General Statutes, § 2952), the remainder in favor of Mrs. Huntington's legal representatives would have been void, had he intended those coming under that designation to be first ascertained at the time of her death. *Tingier* v. *Chamberlin*, 71 Conn. 466. If he meant only those who were her next of kin at the date of his own death, his legacy in their favor is valid. That construction is therefore to be adopted. *St. John* v. *Dann*, 66 Conn. 401, 405.

There can be no apportionment, in favor of the estate of Mrs. Huntington, of the income of the trust received since her decease. Rent is never apportionable ; nor are dividends from savings banks. While it may be customary for these banks to make such dividends semi-annually, and at a fixed rate, the sums divided upon the plaintiff's deposits were nevertheless a part of the capital of the trust fund, until severed from it by the votes of the directors. The borrower of money on interest payable semi-annually, is under an absolute contractual liability, by virtue of which the interest is deemed, in favor of a life tenant, to accrue from day to day, and so to be apportionable in case of the death of the latter during any half year. Savings banks, on the contrary, are mere agencies for investing the funds of depositors, and their only obligation to them, as to any resulting income, is to pay or credit such dividends from it as the directors may from time to time declare in the exercise of a sound discretion.

The moneys thus divided upon the plaintiff's deposits may have been wholly earned since the death of Mrs. Huntington, or they may come from a surplus accumulated years before. Her estate has no interest in anything that was not actually severed from the general funds of the bank during her life. *Spooner* v. *Phillips*, 62 Conn. 62, 70.

The Superior Court is advised that the first question stated in the complaint should be answered in the affirmative, and the fifth in the negative; that the trustee is under no duty to make any conveyance of any interest in the wharf property; that the expression "her legal representatives," in the third section of the codicil, refers to Jedediah and John R. Huntington only; that upon the death of each of these his half of the remainder in the trust fund, created by said codicil, became part of his estate; that no part of said trust estate passes under the residuary clause of the will; and that no part of the dispositions affecting said trust estate offended the statute of perpetuities.

No costs will be taxed in this court.

In this opinion the other judges concurred.