THE BRIDGEPORT TRUST COMPANY, EXECUTOR AND TRUSTEE, *vs.* FANNIE F. MARSH ET ALS.

Third Judicial District, New Haven, June Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A testator who left property worth more than $500,000, mainly in stocks, bonds and bank deposits, gave to his wife, in case she survived him, his homestead and its contents and $50,000; and to his cousin, who was eighty years old, in case of her survival, $5,000, which amount he directed should be paid to her "at the earliest convenience of my executor." In the fifth clause of his will, which was written continuously, without sections or subdivisions, the testator gave the residue and remainder of his property to the plaintiff in trust, providing that the trustee should have full charge of such residue until its final distribution; that it should, as far as possible, keep the same securities it received under the will, but with full power, nevertheless, to sell, invest, and reinvest the same as might become necessary in the discharge of its duties as executor and trustee; that from the date of his death $500 of the income should be paid, monthly, to his wife until her decease, when the trust should cease; that the executor and trustee should, "as soon as practicable," pay to the twenty-four persons and seven corporations therein named, specified sums of money varying in amount from one to ten thousand dollars; and that the residue and remainder of the trust fund, after the payment of lawful charges for

its maintenance, should be divided into one hundred equal parts and distributed to the twelve institutions and corporations named by the testator and in the proportions prescribed by him. In a suit to construe the will it was *held:*—

1. That the thirty-one legatees of specific sums, each of whom took a vested interest upon the death of the testator, were not required to await the decease of his widow and the termination of the trust, but were entitled to payment of their respective legacies "as soon as practicable" after the trust fund came into the hands of the trustee, subject only to the retention by the trustee of a sufficient fund to secure the widow's bequest of $500 monthly.

2. That the parts or shares of the residue of the trust fund, bequeathed to the twelve institutions and corporations by the latter part of the clause, were not to be distributed, even in part, until the decease of the widow; and that the trustee had no discretion to make anticipatory payments on account of the final distribution of that residue.

3. That the net income, aside from that payable to the widow, was to be allowed to accumulate and become a part of the trust fund.

4. That interest on registered or coupon bonds owned by the testator and payable after his death should be apportioned between the principal and income of the estate as of the date of his decease; while the interest payable before but in fact collected thereafter, formed part of the principal of his estate.

Argued June 12th—decided July 25th, 1913.

SUIT to determine the construction of the will of Edward W. Marsh of Bridgeport, deceased, brought to and reserved by the Superior Court in Fairfield County, *Greene, J.,* upon the facts alleged in the complaint, for the advice of this court.

Edward W. Marsh, late of Bridgeport, died January 23d, 1913, leaving a widow, no lineal descendants, and a will executed August 5th, 1912, which was duly probated. At the time of the execution of his will he was in his seventy-seventh year. He was then, as he had been for about sixteen years, treasurer of the People's Savings Bank of Bridgeport, in the active performance of his duties. His estate inventoried $521,962.31. Of this amount $29,000 was represented by two pieces of real estate, including his homestead, about $10,000 by real estate mortgages, and about

$474,000 by stocks, bonds, and bank deposits. The testator kept careful account of his property and affairs, and was well aware of the amount of his estate. Claims amounting to $1,974.04 have been presented to the executor, and it is of the opinion that no others will be received.

The testator, after having provided in the first clause of his will for the payment of his debts, succession and other taxes, and the charges connected with the settlement of his estate, proceeded in the second and third clauses to give to his wife, should she survive him, his homestead and its contents and $50,000. In the fourth clause he gave to a cousin, Miss Schoonmaker, then eighty years of age, provided she survived him, $5,000, with the direction that the sum be paid to her "at the earliest convenience of my executor."

The fifth clause, which covers two and one half pages of the printed record and is written continuously and without break of any kind in the continuity of its language, is, with certain general statements substituted for omissions as noted, as follows:—

"Fifth, All the rest, residue and remainder of my estate, both real and personal, I give to the Bridgeport Trust Company, a corporation located and doing business in Bridgeport, Connecticut, but in trust, nevertheless, for the following purpose. They are to have full charge of this residue and remainder of my estate until its final distribution. They are to keep as far as possible the same securities they receive under this Will. They are however to have full power to sell, invest and reinvest the same as may become necessary in the discharge of their duties as Executor and Trustee. They are to pay from the income of this fund Five Hundred Dollars each and every month to my wife, Fannie F. Marsh, until her decease. Payments to commence from the date of my death. Upon the death

of my wife, Fannie F. Marsh, this trust shall be closed and terminate. The Bridgeport Trust Company, Executor and Trustee, shall as soon as practicable pay to the following named persons the amount affixed to their several names as follows:" (Here follows a list of twenty-four persons and seven religious and charitable institutions).

The clause then proceeds as follows:—

"The residue and remainder of this Trust Fund after the payment of lawful charges for its maintenance shall be distributed by the aforesaid The Bridgeport Trust Company, to the following Institutions and Corporations, as follows: The Bridgeport Trust Company shall first divide the net amount of the remainder of this Trust Fund into One Hundred equal parts or shares. They shall pay to The Bridgeport Hospital Forty-four parts or shares; To The Moody Bible Institute, Chicago, Ill., Twelve parts or shares; To The International Y. M. C. A. Training School, Springfield, Mass., Ten parts or shares; To The Idaho Industrial Institute, Weiser, Idaho, Rev. E. A. Paddock, President, ten parts or shares; To The Congregational Church and Society located in New Milford Village, Connecticut, three parts or shares to establish the Daniel Marsh Fund in memory of my father. The income only to be used to help defray the expenses of the said Church and Society. To The St. John's Episcopal Church and Society located in New Milford Village, Connecticut, Six parts or shares to establish the Jehiel Williams M. D. Fund in memory of my grandfather and the Charlotte B. Williams Marsh Fund in memory of my mother. The income only to be used to help defray the expenses of said St. John's Episcopal Church and Society. To the Park St. Congregational Church and Society located corner of Barnum Avenue and Park St., five parts or shares; To Kings Highway Chapel, Noble

Ave. and Spring Street, two parts or shares; To the Olivet Congregational Church and Society, Cor. North Ave. and Main St., two parts or shares; To The West End Congregational Church, Colorado Ave., two parts or shares; To The Swedish Congregational Church, Lee Avenue, two parts or shares; To The Bridgeport Associated Charities, two parts or shares."

The twenty-four persons enumerated in the list of persons for whom specific sums were provided, as above stated, were all relatives of the testator or of his former or present wife, except four. These four were employees of the People's Savings Bank of which he was treasurer. To them were given $1,000 each. To the others various sums ranging from $1,000 to $7,500 were given. Several of these persons were approximately sixty years of age when the will was made. The first named in the list, a niece of the testator's first wife, to whom he gave $6,000, had in her youth lived for many years with the testator and his then wife, and for several years prior to the execution of the will had been an invalid, as the testator well knew. The second person named is her son, to whom $6,000 is also given. The third and fourth persons named, to each of whom $2,000 is given, are husband and wife, the latter a half-sister of the testator's widow, and fifty-six years of age. They are childless. The fifth and sixth persons are mother and child, the former a wife of a half-brother of the testator's widow, and fifty years of age at the time the will was made. To the mother $2,000 is given, and to the daughter $6,000. The names of these six are followed by those of the four bank clerks, of whom one was sixty years of age and had been employed in the bank since 1886. The remaining names include a cousin of the testator, who was also his intimate friend, his business and financial adviser, and president of the Bridgeport Trust Company, and his wife and daughter,

three sons of first cousins of the testator, each of whom had for several years been in the employ either of the Bridgeport Trust Company or of the Bridgeport Land and Title Company, a corporation closely allied with the Trust Company, the wives of these three, and a son of one of them named after the testator. This son is given $5,000 for his name, and each of the other nine persons enumerated $5,000, except two who get $1,000 each. Another child of a first cousin and her husband receive $7,500 each. To still another and his wife $1,000 each is given.

The seven institutions, to which specific amounts are given, as stated, and the amounts to each, are: the Protestant Widows Society and Sterling Widows Home of Bridgeport, $10,000; the Second or South Congregational Church and Society of Bridgeport, with which he had long been connected, in which he held the position of life deacon, and in whose affairs he always took an active interest, $10,000; the Mount Hermon School for Boys, founded by Dwight L. Moody and located not far from Northfield, Massachusetts, $10,000; the Bridgeport Protestant Orphan Asylum, $5,000; the Young Women's Christian Association of Bridgeport, $5,000; the Connecticut Institute for the Blind, $3,000; and the Boys Club of Bridgeport, $3,000.

The will provides that the gifts to the testator's wife should be in lieu of her dower rights and of any allowance pending the settlement of the estate. She has signed and filed with the Court of Probate her written election to so accept them. She was born in February, 1843, married to the testator in 1888, and has been generally and now is in good health and active in both mind and body.

The legacy to Miss Schoonmaker was paid to her by the executor about six weeks after the testator's death.

The Mount Hermon Boys' School is, and was at the testator's death, a corporation organized under the laws of Massachusetts. By an Act of that State, approved May 20th, 1912, chapter 609, "The Northfield Schools" was incorporated, and the Mount Hermon Boys' School and the Northfield Seminary, an existing corporation, were authorized to convey all their property and assets to it. The Act provides that thereupon the Northfield Schools should for all purposes be the successor of the two corporations merged into it, and that all devises, bequests, conveyances, and gifts theretofore or thereafter made to either of them should vest in the new corporation. It was also provided that, upon such conveyance having been made, the two pre-existing corporations should be dissolved. The new corporation was organized before the testator's death, and the property and assets of the two pre-existing corporations have been conveyed to it, as provided in its charter. These conveyances were made in part before and in part after his death. No steps have been taken to dissolve the other corporations. The Northfield Schools is now carrying on the work of the Mount Hermon Boys' School in the same manner that it was formerly carried on and under the same management.

The plaintiff, the Bridgeport Trust Company, was named as executor and is acting in that capacity.

The following are the questions upon which the advice of the Superior Court is asked:—

"1st. Whether the specific sums given in the Fifth Article of the will to others than the widow, are payable at the death of Fannie F. Marsh, or at the end of a year, or as soon as convenient after her death, or at what time.

"2nd. Whether or not the testator, by his direction in the said Fifth Article to pay the said specific sums 'as soon as practicable,' intended to give said trustee

the right to pay said sums as soon as, in its discretion, a sufficient sum is in its hands to pay said specific sums and to provide for the payments to the widow.

"3rd. Whether any portion of the parts or shares in the residue given under the latter part of Fifth Article are payable before the death of Fannie F. Marsh.

"4th. Whether the trustee has a discretion given by the will to pay any portion of the parts or shares in the residue given under the latter part of the Fifth Article before the death of Fannie F. Marsh.

"5th. Whether the bequest to the Mount Hermon Boys' School should be paid to The Northfield Schools.

"6th. What disposition should the trustee make during the widow's life, of the surplus income, if any, after the payment of the monthly payments to the widow; should any of it be paid to the specific legatees under Article Fifth, or to the residuary legatees, or should it be held until the widow's death?

"7th. If the surplus income should be held until the widow's death, will it then be a part of the fund to be divided into one hundred parts or will the specific legatees, mentioned in the 5th Article, or their representatives, be entitled to interest on their respective legacies from the expiration of one year after the testator's death, or from any other time, and if so, at what rate of interest?

"8th. Whether the sums paid or payable, after the testator's death as interest on the coupon or registered bonds which the testator owned at the time of his death should be apportioned, as of the time of the testator's death, between the principal and the income of said estate, or should all be considered as income of his estate?

"9th. When do the gifts of specific sums under the Fifth Article of the will vest?"

*Sanford Stoddard,* for Clifford W. Marsh *et als.*

*William B. Boardman,* for The Bridgeport Hospital *et als.*

*Elbert O. Hull,* for Francis W. Marsh *et als.*

PRENTICE, C. J. The answer to several of the questions propounded for advice is controlled by the construction to be given to the provisions of the fifth clause of the will touching the time when the two classes of payments therein provided for are to be made. The first of these classes comprises those of specific amounts. The persons and corporations made the recipients of them will hereinafter, for convenience sake, be designated as the special beneficiaries. The second class consists of those corporations to which shares in the final residue are given. They, for purposes of distinction, will be referred to as the general beneficiaries.

With respect to the payments to the special beneficiaries, the direction of the will is that they be made by the Trust Company, executor and trustee, "as soon as practicable." Does this direction mean as soon as practicable after the death of the widow and the consequent termination of the trust, or as soon as practicable after the trust fund comes into the hands of the trustee, or when? The general beneficiaries contend for the first-named construction, the special for the second.

The general beneficiaries rest their contention primarily upon what they conceive to be the indications of the context, and the continuity and order of the provisions of the fifth clause. They assert that this position is fortified by the fact that the trustee is given full charge of the residue and remainder until its final distribution; that it is directed to keep, as far as possible,

the same securities it should receive from the estate; and that the payments to the widow are to be from the income from the fund, thus denoting, it is said, its entire devotion to securing that end.

Had the provision for the payments to the special beneficiaries been separated from the preceding context by a transition to a new paragraph, instead of immediately following it, as it does, the argument drawn from the continuity of the text, the order of its provisions, and the relations of the one in question to those immediately preceding it, would lose much of its apparent significance. But, as the entire fifth clause is marked by no subdivisions or breaks in the continuity of its expression, no conclusion can fairly be drawn from the unbroken continuity of the text, or the succession of its provisions, which would not be equally justified if the context had been broken by paragraphing.

If the testator or draftsman, when he took up the subject of the distribution of the trust fund, after having provided for the termination of the trust, had opened a new paragraph, there would be little force to the argument of the general beneficiaries which we are now considering. In the preceding and introductory portion of the clause there were naturally grouped together those provisions which created the trust, outlined the authority of the trustee in the care and management of the estate, directed the incidental monthly payments out of the income to the widow, and fixed the time for the trust's termination. This done, the testator then passed, in the natural order of his thoughts, to express his desires as to who should be the recipients of his bounty through the operation of the trust. We discover no inference of significance, to be drawn from his having done so, that it was intended that the payments by the trustee provided for should be postponed to the termination of the trust, and not made as inci-

dents of its execution. Neither do we discover, in the fact that the trustee was given charge of the fund until it was finally distributed, or that it was to make the monthly payments to the widow out of the fund's several times larger prospective income, anything pointing to an intention on the part of the testator that the fund was to be kept intact until the widow's death. The payments to the special beneficiaries made, there would apparently remain in the trust fund substantially $300,000, much more than sufficient to yield an annual income of $6,000, the widow's requirement; and Mr. Marsh was no stranger to the extent of his fortune.

The direction of the trustee to keep, as far as possible, the securities originally forming the fund has more plausibility, but the force of its suggestion is made slight by the limiting words "as far as possible," which would appear to indicate an appreciation that compliance with the directions given would not permit more than a conformity in spirit to the testator's wish in the matter of retention of securities.

The contention of the special beneficiaries rests upon a firmer foundation. In the first place, the trustee is told to make the payments to them "as soon as practicable." As soon as practicable after the death of the widow would mean an indefinite continuance of the trust until after the payments were made, and not a determination at the death of the widow as provided. Dealing with the ultimate residue divided among the general beneficiaries, there is no suggestion of a delay in the division. Apparently the testator intended that it should take place forthwith upon the widow's decease, and not be indefinitely postponed, or postponed at all, to await the exercise of the trustee's discretion in the matter of the payments to the special beneficiaries, or for other than the ordinary proceedings in such

cases. The language of the testator strongly indicates that his intent was that the payments to the special beneficiaries should be made by the trustee as soon as practicable after it should come into the control of the fund as trustee.

There are other quite convincing indications to the same effect in the circumstances surrounding the testator and his benefactions. In the second, third, and fourth clauses of the will he had made provision for his wife and special provision for an aged relative, for whom apparently he was desirous of securing the benefit of his bounty without the delay attending the settlement of his estate. The great bulk of his property yet remained undisposed of, and the major portion of his intended beneficiaries had not been remembered. Save for the two cases calling for special consideration, he had reserved what he intended to do in the remembrance of relatives, friends, and charities for treatment in the fifth clause, and through the operation of a trust. Apparently the intended objects of his bounty divided themselves, in respect to the degree of his regard for them and his wish to help them, into two classes. Into one fell all the relatives of himself and his two wives whom he wished to remember, a few business subordinates, and seven charitable or religious institutions. One of these institutions, it is suggestive to note, was the church with which he had been closely and actively associated, and to which he was peculiarly attached. Into the other were grouped twelve miscellaneous corporations of a charitable or religious character. Seven of them were churches, with no one of which did he have special affiliation. With no one of the other five institutions, in so far as it appears, did he hold any specially close relation, or for it have any peculiar feelings of regard, except as its work may have appealed to his philanthropic disposition.

Mrs. Marsh, although seventy years of age, was in good health, and with every prospect of several, and not improbably of a considerable number of years, of life before her. There was every probability that not a few of the special beneficiaries,—several of whom were well advanced in life, and among them those who would naturally make the strongest appeal to his benevolence,—would die before her. A postponement of the payments until after her death would thus mean to the individual donees: first, that some, and quite possibly a considerable number, of the testator's relatives and friends, whom he evidently wished to benefit, would not live to enjoy any benefit at his hands; and second, that all of them would have the benefit which they could derive from his bounty delayed by possibility for years, and its period to that extent shortened. It would mean to the institutions of the first group the same delay in the realization of benefits, and the fate of standing patiently by during the widow's life as they saw income in large proportions accumulate for the ultimate benefit of the general beneficiaries, and, altogether probably, a situation thereby created which would bring these beneficiaries into the position of the favored recipients of the testator's bounty. The church to which he had been closely attached, and with whose affairs he had been actively identified, might easily be called upon to witness other churches, unquestionably holding a much lower place in his regard, coming in for a much larger share of property than it in the ultimate division. It is well-nigh unbelievable that the testator intended any such results, and they ought not to be forced upon him without good reason. They could be mitigated only by the widow's prompt demise, or by a payment out of the income of interest upon the deferred payments. The will contains no direction for the payment of such interest, and it would not be easy to find from the will

an intent on the part of the testator that it should be paid. *State* v. *Main*, 87 Conn. 175, 87 Atl. 38.

The provision that the specific payments be made as soon as practicable contemplates, of course, that the right of the widow to receive her monthly payments be secured by a retention in the trustee's hands of a sufficient fund to insure their being made. Until that condition can be satisfied, the former payments are to be withheld.

It has been suggested by counsel for the general beneficiaries that the excess of income after the payment of the $500 monthly sums to the widow should, as it accrued, be divided among them. We find in the will no warrant for such a course, and if pursued it would only serve to aggravate the situation as far as the special beneficiaries were concerned.

Legislation in Massachusetts has authorized the merger, now consummated, of the Mount Hermon Boys' School and the Northfield Seminary, in the Northfield Schools, now conducted under the same management as the first-named school. The provisions of that legislation in respect to succession and the vesting of bequests render it proper for the trustee, in the due execution of its trust, to make the payment directed to be made to the Mount Hermon School for Boys to the corporation known as the Northfield Schools.

Our conclusion as to the time when the duty devolves upon the trustee to make the prescribed payments to the special beneficiaries, removes from the sixth and seventh inquiries all matters calling for further consideration, except as the right of the general beneficiaries to have a division to them, from time to time, of the surplus income of the fund left in the trustee's hands, after the payments to the widow, may be involved. We have already in effect intimated that the will furnishes no justification for such a division. We are

unable to find authority for it. This income accumulates and attaches itself to the fund, which remains intact in the trustee's hands for distribution upon the termination of the trust.

The sums received by the executor or trustee from interest payments on coupons or registered bonds held by the testator, which became payable after his decease, are apportionable between principal and income as of the time of the testator's death. The reasons which have led to the adjudications that the so-called interest on British Consols, dividends declared on stocks, and periodic payments of money by way of rent, annuities or otherwise, are not apportionable, are not applicable to interest accruing upon bonds representing interest-bearing indebtedness, and the rule is not applicable. Such interest, although not payable until fixed dates, accrues from day to day, and is apportionable like interest which accrues upon any other debt. *Greene* v. *Huntington,* 73 Conn. 106, 114, 46 Atl. 883; *Wilson's Appeal,* 108 Pa. St. 344, 347; *United States Trust Co.* v. *Tobias,* 21 Abb. N. Cas. (N. Y.) 393, 400; *In re Rogers Trusts,* 1 Dr. & Sm. 338, 341; 2 Perry on Trusts (6th Ed.) § 556; 2 Machen on Corporations, § 1766. Interest payments on bonds which had accrued before the testator's death, although in fact not paid until afterward, form, of course, a part of the estate.

The specific gifts contained in the fifth clause vested upon the death of the testator. *Farnam* v. *Farnam,* 53 Conn. 261, 279, 280, 2 Atl. 325, 5 id. 682; *Connecticut Trust & Safe Deposit Co.* v. *Hollister,* 74 Conn. 228, 231, 50 Atl. 750.

The Superior Court is advised that the specific payments directed by the fifth clause of the will to be made to other persons and institutions than the widow of the testator, are payable by the trustee as soon after its receipt of the trust fund as practicable, consistently

Bridgeport Trust Co. *v.* Marsh.

with its retention, subject to the trust, of sufficient funds to secure the payment to the widow during her life of the monthly sums payable to her; that the parts or shares of the residue ordered to be distributed by the latter portion of said clause are not to be distributed, even in part, until the death of the testator's widow; that the trustee is not endowed with a discretion to make anticipatory payments on account of the final distribution of that residue; that the trustee may properly, and in the lawful execution of its trust, make payment to the Northfield Schools of the bequest to the Mount Hermon School for Boys; that the net income which may accrue upon the trust fund, save such as is required to be paid to the widow, may not be divided from time to time, but is to be allowed to accumulate, and thus added to the trust fund; that the sums payable after the testator's death as interest on the coupon or registered bonds owned by him at the time of his death should be apportioned between the principal and income of the estate as of the time of the testator's death; that such sums, payable before the testator's death, but in fact paid thereafter, form a part of the testator's estate; and that the gifts of the specific sums contained in the fifth clause of the will vested in the donees thereof upon the death of the testator.

No costs in this court will be taxed in favor of any party.

In this opinion the other judges concurred.