18 N.J. Super. 314 (1952)
87 A.2d 47
FIDELITY UNION TRUST COMPANY, A NEW JERSEY CORPORATION, AS TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF J. ACKERMAN COLES, DECEASED, PLAINTIFF,
v.
MARION S. ACKERMAN, JR., ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 15, 1952.
*317 Mr. Edward J. Brown for the plaintiff (Messrs. Riker, Emery & Danzig, attorneys).
Mr. Hugo A. Hilgendorff, Jr., for the defendants Marion S. Ackerman, Jr., Warren Ackerman and James Harvey Ackerman.
Mr. Aquila N. Venino for the defendants Richard Crane, Howard Crane and Jean Chambers.
Mr. Herman D. Sorg for the defendants American Baptist Foreign Mission Society and Woman's American Baptist Foreign Mission Society (Messrs. Sorg and Sorg, attorneys).
Mr. Elmer F. Holtz for the defendants Newark Orphan Asylum Association, Newark Home for Foster Care, and The Association to Provide and Maintain a Home for the Friendless (Messrs. Smith, Slingerland, Trauth & Holtz, attorneys).
Mr. Archie H. Ormond for the defendant Children's Aid and Society for the Prevention of Cruelty to Children (Messrs. Ormond & Dippel, attorneys).
FREUND, J.S.C.
The plaintiff, trustee under the last will and testament of J. Ackerman Coles, deceased, applies: (a) for instructions respecting the effect of a proposed consolidation of two eleemosynary corporations upon bequests to them as residuary beneficiaries; and (b) for direction to continue to rely upon four final decrees of the Court of Chancery and a judgment of this court entered in actions brought by charitable beneficiaries for permission to use their bequests for purposes other than those specified in the will, in which actions only the Attorney-General was defendant. Previously, instructions regarding other matters were given the plaintiff in Fidelity Union Trust Co. v. Ackerman, 121 N.J. Eq. 497 (Ch. 1937), modified 123 N.J. Eq. 556 (E. & A. 1938).
*318 The decedent, a bachelor, died on December 16, 1925, a resident of Scotch Plains, Union County, New Jersey. His will, dated June 5, 1925, was duly admitted to probate. Article Seventh thereof devises and bequeaths the residuary estate to the plaintiff, in trust, to hold during the lifetimes of 12 first and second cousins of the decedent, referred to as the "twelve lives," six of whom are now living. Out of the net income, the plaintiff is directed to pay fixed annuities to a number of named persons, and, what is pertinent here, the balance of the net income is to be divided and distributed quarterly to the designated 12 lives "or such of them as may survive, and among the charities hereinafter named, or such of them as shall then be existent." Upon the death of the last of the "twelve lives," the corpus with its accumulations and all legacies which may lapse or otherwise fail, is to be divided into 19 equal shares to be distributed among 12 "charities named or such of them as shall then be existent." The same 12 charities are the beneficiaries of income and corpus; one receiving seven shares, another two shares, and the remaining ten, one share each.

I.
Newark Orphan Asylum Association, the beneficiary of one share, was incorporated by special act of the Legislature approved February 9, 1849. In 1948 it combined with the Protestant Foster Home Society of the City of Newark, also created by special act approved February 28, 1849, and the merged organization is now known as the Newark Home for Foster Care. In 1949, the latter instituted an action in this court against the Attorney-General of New Jersey and obtained a judgment declaring its right to receive the income and corpus bequeathed to the Newark Orphan Asylum Association and permitting the use thereof not only for the purposes designated by the will, but also for furnishing foster home care.
The Newark Home for Foster Care and another beneficiary of one share, the Association to Provide and Maintain *319 a Home for the Friendless, on January 25, 1951, entered into an agreement to combine in accordance with the provisions of R.S. 15:1-17. The agreement is expressly contingent upon an adjudication by the court that the combined corporation shall be entitled to receive the legacies made to each of the combining corporations under decedent's will. Both associations are engaged in similar charitable work and the successor corporation will continue such activities under the name of "Newark Home for Foster Care."
The attorneys for the six survivors of the "twelve lives," who are entitled to share in the income but not in the corpus, contend that the Newark Orphan Asylum Association, by reason of its merger, is no longer "existent" within the intent and meaning of the Seventh Article of the will; that if the proposed consolidation of the Newark Home for Foster Care and the Association to Provide and Maintain a Home for the Friendless is effectuated, the latter corporation also will have ceased to exist; that both legacies fail; and that the doctrine of cy pres does not apply.
"Existent" is defined as "having being; existing; esp. at present." Webster's New International Dictionary (2d ed.). "Existence" is "that which exists, that which actually is an individual thing; an actuality." 35 C.J.S., page 200. The testator placed the existence of a charity in the same category as the survival of an individual beneficiary, for he provided that the net income should be distributed among the "designated natural persons or such of them as may survive, and among the charities hereinafter named or such of them as shall then be existent." In a literal and technical sense, the phrase "as shall then be existent" referring to a corporation would require the corporation to be a distinct entity; to be alive. Hence, strictly speaking, when a corporation merges into another or if as the result of an amalgam between two corporations, a new one is formed, the components cannot be said to "be existent."
But I am convinced that the testator did not indulge in such finicky legalism. In the construction of a will, the *320 polestar for the court's guidance is the testator's intention. A will purporting to establish a charitable trust is to be given liberal construction and legacies for the use of charity will not be declared void if they can, by any possibility, consistent with law, be held valid. The incontestable fact is that the testator's avowed and dominant purpose was that his property be devoted to a wide variety of charitable uses; viz., the advancement of religion through foreign missions, the promotion of education, the care of orphans, homeless and crippled children  all charitable trusts. Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325 (E. & A. 1939); Wilber v. Owens, 2 N.J. 167 (1949); Restatement, Trusts, sec. 368-372.
Construing the will as it would seem the testator intended, a charity which merges into or consolidates with another does not cease to exist so as to cause the lapse of the legacy or devise, but the successor corporation is entitled to receive it for the same purposes and trusts as the beneficiary named in the will. The Legislature has expressly provided for the contingency which has now arisen. R.S. 15:1-19. The statute reads:
"The corporate entity of each corporation or association so combined shall be continued for the purpose of enabling it to receive any legacy or devise, made for its benefit and intended for its use and purposes, the same as though the combination had not been effected. The trustees of the corporation created by the combination shall, for that purpose, be the trustees of each corporation or association so combined. Immediately upon the receipt of any such legacy or devise, or the proceeds thereof, the title to such property shall vest in the corporation created by such combination, subject to any trust or other conditions imposed in relation thereto."
The defendants argue that this statute is inapplicable because it was enacted subsequent to the date of the execution of the will and the death of the testator. Nevertheless, the point is without merit, for under the facts of this case the statute does not deprive the individual defendants of any vested right. This is also the rule of law established by text and decisional authority.
*321 3 Scott on Trusts, sec. 397.3, at page 2078, declares:
"The question of the failure of the disposition also arises where it is made to a corporation which never existed or had ceased to exist at the time when the disposition was made or subsequently ceased to exist. Where the existence of the particular organization is not of the essence of the gift, where the primary purpose of the testator was that the property should be applied to certain charitable purposes, the disposition does not fail. On the other hand, where the identity of the donee is of the essence of the gift, and the donee is a corporation which has never existed or has ceased to exist, the disposition fails. Where a bequest is made to a corporation which was in existence at the time of the testator's death but which ceased to exist before the legacy was paid to it, it has been held that the bequest does not fail even though it would have failed if the corporation had ceased to exist at the testator's death."
In Reed v. Institute of Musical Art, 141 N.J. Eq. 111 (Ch. 1947), the testatrix made bequests of musical instruments and her residuary estate to an institution which later for all operating purposes combined with the Juilliard School of Music. Vice-Chancellor Stein held that the bequests be given to the operating school, the Juilliard School of Music.
A situation almost identical with the one here presented arose in Bible Institute Colportage Association v. St. Joseph Bank & Trust Co., 118 Ind. App. 592, 75 N.E.2d 666 (App. Ct. 1947). The residuary estate was bequeathed to the plaintiff, a corporation of the State of Illinois, which merged with the Moody Bible Institute, another Illinois corporation, pursuant to statute which provided that such a consolidated corporation should possess all the rights and property belonging to each of the merging corporations. As in this case, it was claimed that the bequest failed because the legatee was no longer in existence. The court, however, held the legacy payable to the Moody Bible Institute, which was empowered and entitled to execute the trust under the terms of the decedent's will.
In Bridgeport Trust Co. v. Marsh, 87 Conn. 384, 87 A. 865 (Sup. 1913), a gift was made to Mt. Hermon School for Boys, a Massachusetts corporation. After decedent's death, a new school, Northfield Schools, was incorporated and *322 this was the successor of the Mt. Hermon School and the Northfield Seminary. The statute provided, as in New Jersey, that all bequests and conveyances made to either of the merging corporations should vest in the successor. The court ordered the legacy payable to the new institution.
In In re Doane's Estate, 208 N.Y. Supp. 320 (Sur.Ct. 1925), a legacy was made to Hahnemann Hospital of the City of New York. It consolidated with Laura Franklin Free Hospital into a new corporation known as the Fifth Avenue Hospital, to which the legacy was directed to be paid.
To the same effect, see In re Wehrfritz' Estate, 287 N.Y. Supp. 908 (Sur.Ct. 1936); In re Hoaglund's Estate, 74 N.Y. Supp.2d 156 (Sur.Ct. 1947), affirmed 297 N.Y. 920 (Ct.App. 1948); In re Martin's Estate, 96 N.Y. Supp.2d 842 (Sur.Ct. 1950); Re Hagan, 14 N.W.2d 638, 152 A.L.R. 1296 (Sup. Iowa 1944); 14 C.J.S., Charities, sec. 66, page 533.
Even if the corporations were to be considered as having ceased to exist, the bequests would not fail, but would be awarded to the merged or consolidated corporations by the application of the cy pres doctrine. Fidelity Union Trust Co. v. Laise, 127 N.J. Eq. 287 (Ch. 1940); Bridgeport-City Trust Co. v. Bridgeport Hospital, 120 Conn. 27, 179 A. 92 (Sup. 1935); Duncan v. Higgins, 129 Conn. 136, 26 A.2d 849 (Sup. 1942); In re Peterson's Estate, 202 Minn. 31, 277 N.W. 529 (Sup. 1938); In re Mills' Will, 200 N.Y. Supp. 701 (Sur.Ct. 1923); In re Walter's Estate, 269 N.Y. Supp. 400 (Sur.Ct. 1933), 402 (Sur.Ct. 1934); New York City Mission Society v. Board of Pensions, Presbyterian Church, U.S.A., 24 N.Y. Supp.2d 395 (App. Div. 1941).
Restatement, Trusts, sec. 399, Comment k, page 1217, states the general rule as follows:
"k. Where institutions merge or cease to exist. If property is given in trust to be applied for the support of a particular charitable institution, and the institution subsequently merges with another institution established for similar purposes, the court will permit the *323 application of the property for the new institution unless the settlor manifested an intention to restrict his gift to the institution which he named. So also where the institution ceases to exist, the court will permit an application of the property cy pres, unless the settlor manifested an intention to restrict his gift to the institution which he named."
Where, however, it clearly appears from the will that the testator had no general charitable intent, or other conditions make the actual charitable purpose impossible of accomplishment, or where the testator specifically provides for the contingency of the non-existence of a charitable institution named, then the legacy fails. Brown v. Condit, 70 N.J. Eq. 440 (Ch. 1905); Morristown Trust Co. v. Morristown, 82 N.J. Eq. 521 (Ch. 1913); In re Harrington's Estate, 151 Neb. 81, 36 N.W.2d 577 (Sup. 1949).
However, the facts in the instant case are clearly distinguishable from those cases. In the Brown case, the bequest was "to the Hospital Fund for Sick Seamen at Navy Yard, Brooklyn, New York, care of Mr. John M. Wood, chaplain." Mr. Wood was not a chaplain. Further, he had predeceased the testatrix, and there was no fund for the benefit of sick seamen. Vice-Chancellor Stevenson held that the cy pres doctrine did not apply and that the bequest lapsed because "the conditions existing at the time of the testator's death make the actual charitable purpose of the testator impossible of accomplishment."
In the Morristown case, a legacy to the "Society for Providing Medical Attendance to the Worthy Poor of the Township of Morris" failed for this reason: At one time there had been such a voluntary association, but it disbanded after the testator's death, without any attempt to collect the legacy. Vice-Chancellor Howell held that the action of the legatee had the effect of a rejection of the legacy and construed that the fund was not to be administered cy pres, but should fall into the residue. He quoted Clark v. Taylor, 1 Drew. 642, as follows:
"Now, there is a distinction well settled by the authorities. There is one class of cases in which there is a gift to charity generally, indicative *324 of a general charitable purpose, and pointing out the mode of carrying it into effect. If that mode fails, the court says the general purpose of the charity shall be carried out. There is another class in which the testator shows an intention, not of general charity, but to give to some particular institution, and then if it fails because there is no such institution, the gift does not go to charity generally. That distinction is clearly recognized, and it cannot be said that wherever a gift for any charitable purpose fails it is nevertheless to go to charity."
In the case sub judice, therefore, the bequests do not fail by reason of the merger of the charities. It matters not which theory the court adopts; the same end is attained whether the charities be considered "existent" for the purposes of the will, or whether they be considered not "existent" and the cy pres doctrine be applied.

II.
It is also contended that the Newark Home for Foster Care is disqualified from receiving the legacy because it prescribes that children under its care shall be of the Protestant faith, while the association to which the share was bequeathed, namely, the Newark Orphan Asylum Association, was non-sectarian. But this contention has no basis in fact, for the constitution of the Asylum Association provided that the children be taught the essential principles of the Gospel, as held by the Evangelical Protestant denominations. The certificate of incorporation of the Newark Home for Foster Care stated that "the children shall be taught the essential principles of Christian living." Accordingly, the point is without merit.

III.
All the bequests to charitable institutions in decedent's will were "for the upkeep and extension" of buildings. Heretofore, four separate proceedings were instituted in the former Court of Chancery and one in this court by the various charitable beneficiaries to secure permission to devote the *325 income to purposes other than the upkeep and extension of buildings. Brief reference to these proceedings will hereafter be made. In each of them, the sole defendant was the Attorney-General of the State of New Jersey, and final judgments were duly entered granting the relief sought by the various suitors. Since the judgments are res judicata only upon the parties to the actions, the plaintiff herein, while not impugning the validity of the decrees, seeks a judgment which will be binding upon all parties in interest, and in this proceeding has made all of them parties defendant.
The American Baptist Foreign Mission Society brought an action in Chancery in 1937. The complaint alleged that the income which it had been receiving for its work in South India was greater than was necessary for the upkeep and extension of its buildings, that the testator's primary intention had been the maintenance of an educational program and that there was danger that his purpose would be defeated unless authority was granted to apply the income for its general educational and religious purposes.
The same society, together with two co-complainants, the American Baptist Home Mission Society and the International Baptist Seminary, in 1940 instituted another proceeding seeking leave and approval to apply the income which in the will had been designated for the upkeep and maintenance of its seminary buildings in East Orange, New Jersey, to be used instead for general purposes of training religious and educational leaders in accordance with changed methods and conditions.
In 1938, the Woman's American Baptist Foreign Mission Society instituted a proceeding for the same general relief.
Another legatee, the Children's Aid & Society for the Prevention of Cruelty to Children, had operated lodging houses for orphaned children at various locations in the City of Newark. As a result of experience and expert opinion, the method of caring for such children had changed. They were being placed in foster homes, though the expense of their care was borne by the institution. Thus, the institution *326 had no need for a building. In 1942, it filed a complaint praying for authority to expend the income to furnish foster home care for children, and such a judgment was entered.
As previously mentioned, in 1949, the Newark Home for Foster Care applied for and was granted similar relief.
The will under consideration contains no provision for reverter in the event that a legacy should fail. Cuthbert v. McNeill, 103 N.J. Eq. 184 (Ch. 1928), affirmed 104 N.J. Eq. 495 (E. & A. 1929). The only effect of the failure of a legacy in this case would be that fewer charitable beneficiaries would share in the residuary estate. The individual beneficiaries have no interest in the corpus of the residuary estate  all of it goes to the charities.
Each bequest to a charitable beneficiary is in trust and, therefore, each beneficiary is a sub-trustee. Over the funds in the hands of sub-trustees, the trustee under the will has no power or control. This function resides in the Attorney-General; it is his duty to see that the public interests are protected in the administration of a public charity. As the representative of the public, the Attorney-General was the only necessary party in the proceedings to obtain the court's authority to apply the funds for purposes other than those specified in the will. MacKenzie v. Trustees of Presbytery of Jersey City, 67 N.J. Eq. 652 (E. & A. 1905); St. James' Church v. Wilson, 82 N.J. Eq. 546 (Ch. 1913); Mills v. Montclair Trust Co., 139 N.J. Eq. 56 (Ch. 1946).
Since the dominant purpose of the testator was to create charitable trusts, the facts present an ideal situation for the application of the cy pres doctrine. The rule is that "if property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor." Restatement, Trusts, *327 sec. 399, page 1208; MacKenzie v. Trustees of Presbytery of Jersey City, supra; Cuthbert v. McNeill, supra; Wilber v. Owens, 142 N.J. Eq. 99 (Ch. 1948), affirmed 2 N.J. 167 (1949); Mirinda v. King, 11 N.J. Super. 165 (App.Div. 1951); Bankers Trust Co. v. N.Y. Women's League for Animals, 17 N.J. Super. 398 (Ch. 1952).
In Rowe v. Davis, 138 N.J. Eq. 122 (Ch. 1946), funds were bequeathed to a home and nursery school for the blind. Vice-Chancellor Bigelow said: "During the past 25 years or so, the trend of expert opinion has run against institutional homes of all kinds,  for orphans, paupers, aged,  and in favor of caring for them in their own or other private homes." Accordingly, he directed the legacy be used for the care of blind children in their own or foster homes.
Therefore, independently of the judgments and decrees entered in the proceedings above described, the beneficiaries will be permitted to use the income and the corpus when distributed for their general purposes, and the plaintiff will be authorized to continue to pay the income and the corpus for such purposes.
Judgment in conformity with this opinion may be presented.