IN RE ESTATE OF JANE E. DOUGLASS.

WILLIAM ROYER ET AL., APPELLEES, V. JEFFERSON T. POTTER ET AL., APPELLEES, THOMAS DORSEY BEALL, APPELLANT.

FILED SEPTEMBER 26, 1913.    No. 18,008.

1. **Wills:** BEQUEST: "PUBLIC CHARITY." A gift by will of the income of certain shares of bank stock of the First National Bank to the

First Congregational Church Society of Seward, Nebraska, is a donation to a public charity.

2. ——: ——: TRUSTEES. The officers of the bank, where they are designated for that purpose, may hold the title to said bank stock as trustees, and pay the dividends accruing to said stock to the church for religious purposes.

3. ——: DEVISE: CHARACTER OF ESTATE. A gift by will of the parsonage, together with the lots upon which it is situated, to such church society so long as it is used for a parsonage, etc., is a donation to a public charity, and vests the church with a base fee to said lots, terminable upon an event that may or may not happen, and, until the happening of the contingency or event, the trustees or governing body of the church may hold and use the property for the purpose for which it was donated.

APPEAL from the district court for Seward county: EDWARD E. GOOD, JUDGE. *Affirmed.*

*Green, Breckenridge, Gurley & Woodrough,* for appellant.

*T. L. Norval, J. J. Thomas* and *R. S. Norval,* contra.

BARNES, J.

Action by the executors to obtain a construction of the will of the late Jane E. Douglass. The findings and judgment of the district court for Seward county were in favor of the contentions of the executors, and Thomas Dorsey Beall, one of the collateral heirs, has appealed.

It appears that Jane E. Douglass, late a resident of Seward, Nebraska, by her will, which has been duly admitted to probate, in items 9 and 10 of that document, provided as follows:

Item 9. "I give, grant, devise and bequeath to the First Congregational Church Society of Seward, Nebraska, * * * the income derived from sixty shares of bank stock in the First National Bank of Seward, Nebraska; * * * and I direct the officers of said bank to hold said principal amount of said bank stock in trust for the benefit of said church; * * * and I direct said

officers of said bank to pay to the treasurer of said church society one-twelfth of said annual income of said bank stock on the first day of each month."

Item 10. "I hereby give, grant, devise and bequeath to the First Congregational Church of Seward, Nebraska, the west seventy-five feet of lots numbered 7, 10 and 11, respectively, in block numbered 2 of the original town, now city, of Seward, Nebraska, to be used by said church society as a parsonage so long as said church shall remain the First Congregational Church or Church Society of Seward, and shall not unite with any other church or churches, save and except the United Brethren or Protestant Methodist Church or Churches, and so long as said society shall keep same well and reasonably repaired, and shall seasonably and regularly pay all necessary insurance and all taxes and assessments lawfully levied thereon, and shall not ever directly or indirectly employ, hire or engage Reverend F. W. Leavitt as pastor or minister in said church, or in any other capacity, after my death. If, however, any of the above conditions are not complied with, or should this bequest for any other reason fail to be carried out as herein provided, I hereby direct that said parsonage and premises revert to my separate estate, be sold at public sale, and the proceeds thereof be divided among the heirs and legatees mentioned and described in item 16 of this my last will and testament." There was a similar provision attached to item 9.

The first question to be determined is: Are the gifts above mentioned donated to a public charity? For upon this question will depend the correctness of the findings and judgment of the trial court.

In *St. James Orphan Asylum v. Shelby*, 60 Neb. 796, this court held that, under the common law, the English courts of chancery exercised inherent judicial power over charities anterior to, and independent of, the statute of 43 Elizabeth, and that the doctrine of charitable uses as administered as part of the common law jurisdiction of the courts of chancery exercising judicial power has been

transplanted in this state, and become a part of the jurisprudence of courts possessing common law equity powers. In the opinion in that case, Judge HOLCOMB, speaking for the court, said: "After discussing a number of cases decided by the chancery courts of England, and expressing the opinion that the jurisdiction under which that court acted belonged to it in the exercise of its judicial powers independent of the statute of 43 Elizabeth, the author further says: 'In some of these cases the charities were not only of an uncertain and indefinite nature, but, as far as I can gather from the imperfect statement in the printed records, they were also cases where there were no trustees appointed, or the trustees were not competent to take.'" In that case the terms of the will under consideration gave to the trustee power to apply the property and the proceeds of the same and the sale thereof to some particular and definite charity according to the judgment of the trustee, once and for all, after which the trustee and his duties and powers in the premises should cease and terminate, the trust having been fully discharged. In disposing of the question there presented, it was said: "This contract, like all others, must be construed with a view of carrying out the intention of the testator, and unless there is something in it contrary to the laws of the state, or in contravention of public policy, no reason exists for declaring it invalid. The object of the trust is clearly charitable, and is specified as such in so many words. A trustee is named, and is empowered by the testator to select for him, and as an expression of his will, a charity upon which the property in controversy is to be bestowed. The trustee has accepted the trust. He is willing to carry out its provisions, and has attempted to do so. He stands ready to make certain the very matter of uncertainty upon which contestant relies for a judgment. The will is for an object which has always been looked upon with favor by the courts. It is one of the most worthy of all bequests, save perhaps near kindred, having, by reason of their kinship,

peculiar claims to the consideration of a testator in the distribution of his property. The bequest is sanctioned by law and contravenes no public policy. Its invalidity can be declared only by the adoption of a doctrine at variance with the great weight of authority, to wit, that the beneficiaries shall be so certain that they may come into court claiming the benefits of the trust, and demand its execution. We do not think this doctrine should be adopted in this state, and hence hold to the view that where a bequest for a charitable purpose, though entirely general and uncertain in its character, is made to a trustee who is empowered to select the object of the charity, and who is willing to or has accepted the trust, the will will not be declared invalid because of the general nature of the object or objects of the charity." It may be stated, in passing, that the trustees mentioned in item 9 of the will under consideration have certified in writing their acceptance of the trust.

In *St. James Orphan Asylum v. Shelby, supra*, the gift was in the most general terms that the proceeds be applied to some charity; but the testator preferred the same to be applied to an establishment or maintenance of an orphanage. The will in the case at bar is much more specific, for it directs the dividends of the stock to be paid to the First Congregational Church, an institution of which the testatrix had been a member since its organization. Webster defines the word "church" as a body of Christian believers holding the same creed, observing the same rights and acknowledging the same ecclesiastical authority. The terms "church" and "society" are used to express the same thing, namely, a religious body organized to sustain public worship. The term "church" imports an organization for religious purposes. And a gift to a church without restriction as to the use to be made of the property is a charitable purpose.

In *McAlister v. Burgess*, 161 Mass. 269, 24 L. R. A. 158, it was said: " 'The very term church imports an organization for religious purposes; and property given to it eo

*nomine,* in the absence of all declaration of trust or use, must by necessary implication be intended to be given to promote the purposes for which a church is instituted, the most prominent of which is the public worship of God.' * * * It is a matter of common knowledge that the individuals who attend the services of any particular church are not limited to the members of that church, but are an indefinite and varying number of persons."

A gift to a church of land for a site for a church is a good charitable gift. *Schmidt v. Hess,* 60 Mo. 591; *Reformed Protestant Dutch Church v. Mott,* 7 Paige Ch. (N. Y.) 77; *Jones v. Habersham,* 107 U. S. 174; *Pennoyer v. Wadhams,* 20 Or. 274, 11 L. R. A. 210; *Van Wagenen v. Baldwin,* 7 N. J. Eq. 211.

Where a gift to an unincorporated company is definite and certain, a court of equity will enforce the execution of the trust. 2 Perry, Trusts (6th ed.) sec. 730. A gift of real and personal property generally, without stating the purpose, to a corporation existing for a peculiar purpose alone, must be regarded as a devise for such particular purpose. *Santa Clara Female Academy v. Sullivan,* 116 Ill. 375, 56 Am. Rep. 776; *McAlister v. Burgess, supra; First Universalist Society v. Fitch,* 8 Gray (Mass.) 421; *Gibson v. McCall,* 1 Rich. Law (S. Car.) 174.

We think it needless to multiply authorities. The gift to the church in question seems clearly to be a gift for charitable purposes. The will in the case at bar provides: "I give, grant, devise and bequeath to the First Congregational Church Society of Seward, Nebraska (the income from certain shares of bank stock), and I direct the officers of said bank to hold said principal amount of said bank stock in trust for the benefit of said church." It is contended, however, that the bank officers are not competent to take or administer the trust, and it is argued that the position of a bank officer and a trustee are incompatible. In other words, that there is such a conflict of interest that the officer cannot serve in his trust capacity without injury to the bank. On the other side, it

is argued that, if a bank officer may own stock as an individual, he may also hold it in trust for a beneficiary, and that his duty as such could not possibly conflict with his duty as a director, and the more zealously he performs his duties as a director the more faithfuly he serves the interest of his beneficiary. Upon this point no authorities are cited; but, if it be conceded that the positions are incompatible, it does not follow that the trust must fail, for where the two offices are inconsistent the acceptance of the last vacates the first. In the instant case the officers have voluntarily accepted the trust, so, if it be incompatible, they have *ipso facto* vacated their positions as bank officers. We see nothing, however, which would indicate that the officers could not hold the stock in trust for the benefit of the church, and their duties as trustees are not in conflict with their duties as bank officers.

It is argued that the district court erred in holding that a trust was created in favor of the church with respect to the bank stock, and appellant's counsel ask: In whom does the title to the property now vest? Under the doctrine announced by the supreme court of Illinois in *Kemmerer v. Kemmerer*, 233 Ill. 327, 122 Am. St. Rep. 169, it vests in the executor or trustee.

In this case it is not necessary to resort to implication in order to vest this title in the trustees. By the terms of the will itself it is provided: "I direct the officers of said bank to hold said principal amount of said bank stock in trust for the benefit of said church." This language furnishes unmistakable proof that the testatrix intended to vest title to the bank stock in the officers of the bank and their successors in office, and was sufficient to vest the trustees with the legal title to said stock. *Young v. Young*, 80 N. Y. 422; *Organized Charities v. Mansfield*, 82 Conn. 504.

Great stress is placed by the appellant on that portion of the will providing that, if the gift to the church should fail, the property "reverts to her separate estate," and shall be divided among the heirs and legatees mentioned

In re Estate of Douglass.

in item 16. An analysis of this proposition shows it to be without merit. It was the primary wish of the testatrix to have the property go to the church. True, she annexed conditions, upon the occurrence of which the gift might fail, but they are conditions subsequent, and do not destroy the gift. None of those conditions have occurred. It follows that, if we give this property to the residuary legatee without the occurrence of those conditions, we violate the express language of the will of the testatrix.

We come now to consider the effect of item 10, which provides as follows: "I hereby give, grant, devise and bequeath to the First Congregational Church of Seward, Nebraska, the west seventy-five feet of lots numbered 7, 10 and 11, respectively, in block numbered 2 of the original town, now city, of Seward, Nebraska, to be used by said church society as a parsonage so long as said church shall remain the First Congregational Church or Church Society of Seward." The conditions attached to this gift are of the same nature as those relating to item No. 9, and are not vital to this discussion.

It is argued by the appellant that the interest of the church in the dwelling is at best a tenancy, or license, to cease upon certain conditions. It is apparent, however, from the language of the will that the testatrix intended to give the church some sort of an estate in the property. It is also apparent that that estate is what in law is considered a base or qualified fee. "A base or qualified fee is such an one as hath a qualification subjoined thereto, and which must be determined whenever the qualification annexed to it is at an end." 1 Blackstone, Commentaries (Cooley, 4th ed.) 109. The estate is a fee because by possibility it may endure forever in a man and his heirs, yet as that duration depends upon concurrence of collateral circumstances which qualify and debase the purity of the donation, it is therefore a qualified or base fee. If the happening of the event upon which the estate is to be determined becomes impossible, it is converted into an estate in fee simple. 16 Cyc. 602.

In *Mendenhall v. First New Church Society*, 177 Ind. 336, it was said: "It has been held that a conveyance of real estate to a religious society to hold so long as such real estate shall be devoted to the use and interest of the church, on the condition that said real estate should revert to the estate of the grantor on the cessation of such use, created in said religious society a determinable fee in the property." *North v. Graham*, 235 Ill. 178, 18 L. R. A. n. s. 624; *Lyford v. Laconia*, 75 N. H. 220.

In *Smith v. Smith*, 64 Neb. 563, and *Schnitter v. McManaman*, 85 Neb. 337, this court expressly recognized the validity of base or determinable estates. In the case last cited the will provided: "I give and bequeath to my beloved son, John N. Barrett, all property of which I shall die seized or possessed, whether real, personal or mixed." This of itself would have passed an estate in fee simple, but a later portion of the will provided: "In the event of the death of John N. Barrett without lawful issue born, the property herein bequeathed to him shall immediately become the property of my daughter Mary Katherine McManaman." Considering the will as a whole, it was decided that it was the intention of the testator to devise to his son a base or determinable fee.

The suggestion as to the title being in abeyance is without point, for here the fee is not in abeyance, but vested in the church, the proprietor of a determinable fee, so long as the estate in fee remains, until the contingency upon which the estate is limited occurs. Whatever estate was created by the will of Mrs. Douglass vested immediately upon her death. The limitations over, whatever be their legal effect as to creating future estates for the benefit of residuary legatees, cannot detract from the estate devised to the church.

We therefore hold that item 10 conveys to the church a determinable fee, defeasible by its terms upon the happening of certain events which may or may never occur. The estate conveyed to the church is an indefinite fee, and therefore the limitation over is not a remainder, but

rather an executory devise, and vests no estate in the residuary beneficiary. *North v. Graham, supra; Lyford v. Laconia, supra; Mendenhall v. First New Church Society, supra.*

In concluding this opinion, it may be observed that the case has been ably presented by exhaustive and well written briefs; that many points are discussed therein which have not been adverted to by the court, but all questions raised by the briefs have had due consideration.

It may be said that it appears that Mr. and Mrs. Douglass came to Seward county, Nebraska, in 1870. They accumulated their fortune there, valued at about $100,000. Of this amount Mrs. Douglass set apart for the reglious use of the community in which they lived the parsonage and $6,000 in bank stock. The residue was given to relatives residing in New York, New Jersey, Virginia, and California, who contributed nothing to the estate, nor the comfort of the testatrix in her lifetime. They have no moral claim to the generous bequest the will bestows upon them. The community in which Mr. and Mrs. Douglass spent their lives made this fortune possible, and it was a fitting manifestation of her gratitude towards the community that she made provision for the perpetuity of an institution devoted to its moral and religious worship. As we view the terms of her will, it needs no construction. It is as plain as words can make it.

The judgment of the district court was therefore right, and is

AFFIRMED.

REESE, C. J., LETTON and FAWCETT, JJ., not sitting.