*In re* ESTATE OF BARBARA AMMOTT FULLER, Deceased—(LUCILLE R. LAIR *et al.,* as Exrs. under the Will of Barbara Ammott Fuller, Deceased, Plaintiffs, *v.* JERSEYVILLE COMMUNITY HOSPITAL *et al.,* Defendants.)

JERSEYVILLE COMMUNITY HOSPITAL and BOYD MEMORIAL HOSPITAL, Appellants, *v.* LUCILLE R. LAIR *et al.,* as Exrs. under Will of Barbara Ammott Fuller, Deceased, and Passavant Memorial Area Hospital Association, Appellees.

(No. 11789;

Fourth District—March 21, 1973.

Schwarz & Self, of Jerseyville, and McDonald and Strickland, of Carrollton, both for appellants.

Bellatti, Fay & Bellatti, of Jacksonville, for appellees.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

This is an appeal by the Jerseyville Community Hospital and the Boyd Memorial Hospital from an order of the circuit court of Calhoun County construing the will of Barbara Ammott Fuller. The action was originally brought by Lucille Lair and the Commercial National Bank of Peoria, as co-executors of the will of testatrix, for a construction of the residuary clause. The trial court found that a proper construction of the will re-

quired that one-third of the residuary estate should pass to Passavant Memorial Area Hospital Association. The trial court noted that the doctrine of *cy pres*, although unimportant to this decision, could be employed to obtain the same result if it were held impossible to carry out the specific wish of testatrix. The trial court has filed a comprehensive opinion.

Clause VI of the testatrix's will reads as follows:

> "All the rest, residue and remainder of my property, of every kind and nature whatsoever, real or personal, I direct my Executor to convert into cash and divide the same into three (3) equal parts, giving one (1) part to the JERSEYVILLE COMMUNITY HOSPITAL of Jerseyville, Illinois; one (1) part to the OUR SAVIOUR'S HOSPITAL of Jacksonville, Illinois; and one (1) part to BOYD MEMORIAL HOSPITAL of Carrollton, Illinois."

Testatrix's will was executed May 17, 1962, and two codicils were added in 1965. Barbara Fuller died on February 6, 1969. At the time of the execution of the will, Our Saviour's Hospital and Passavant Memorial Area Hospital Association were operating acute care facilities in the City of Jacksonville, Illinois. Subsequently, Our Saviour's Hospital changed its name to Holy Cross Hospital. Then, in June 1968, articles of merger were executed, and Holy Cross agreed to merge with Passavant as of July 1, 1968. Thereafter, Holy Cross ceased to operate as a separate corporate entity. Passavant was the surviving corporation, and Holy Cross was renamed the Frank A. Norris Hospital. The two hospitals are now operated by Passavant as one unit. Boyd Memorial and Jerseyville Community Hospital argue on appeal that the portion of the residuary estate left to Our Saviour's Hospital lapsed since it was not in existence at the time of the testatrix's death. It is contended that this portion should pass to the remaining residuary legatees under the Anti-Lapse statute. (Ill. Rev. Stat. 1967, ch. 3, par. 49.) The issue on appeal is whether or not the trial court was justified in finding that one-third of the residuary bequest designated for Our Saviour's Hospital should pass to Passavant Memorial Hospital Association.

The Anti-Lapse statute refers to persons rather than corporations. However, the parties agree that Illinois Revised Statutes, 1967, ch. 131, par. 1.05, supports a construction of the word "person" or "persons" as applying to bodies politic and corporate as well as individuals.

After the merger, Passavant used the buildings of Holy Cross Hospital and operated as a single unit. Passavant had complete managerial control. Ninety-four per cent of the employees of Holy Cross remained in the employment of Passavant. The director of nurses at Holy Cross remained although the majority of sisters engaged in the operation of that

hospital left. The administrator of Passavant took over the duties as director of each hospital after the merger. Holy Cross Hospital maintained its x-ray unit, pharmacy, and dietary facilities. The food service catering to both hospitals before the merger remained afterward. Patients continued to have their choice of selection between the hospitals.

Section 42(d) of the Illinois General Not-For-Profit Corporation Act (Ill. Rev. Stat. 1967, ch. 32, par. 163(a)41(d)) provides for the effect of merger as follows:

> "Such surviving or new corporation shall thereupon and thereafter possess all the rights, privileges, immunities and franchises of each of the merging or consolidating corporations; and all property, real, personal and mixed, and all debts due on whatever account, and all other choses in action and all and every other interest, of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of such corporations shall not revert or be in any way impaired by reason of such merger or consolidation."

The statute was construed in *Chicago Title & Trust Co. v. Zinser*, 264 Ill. 31, 105 N.E. 718, where the testator in his will named the Real Estate Title and Trust Company as executor with power to sell. After the execution of the will and before the death of the testator, Real Estate Title and Trust consolidated with the Chicago Title and Trust Company. The new corporation was known as the Chicago Title and Trust Company. The supreme court of Illinois considered the effect of the consolidation on the powers granted in the will. In upholding the power of Chicago Title and Trust to act as executor, the supreme court said:

> "A corporation is without personality, and if it is selected as trustee or executor there can be no reliance upon individual discretion or even upon the continuance of the same administration. Etta Nelson, in naming the Real Estate Title Company as executor and trustee, knew that its directors, officers and stockholders might change from time to time, and that the statute authorized a change of name or place of business, enlargement or change of the object for which the corporation was formed, an increase or decrease of capital stock or change in the number of shares or par value, increase or decrease of the number of directors, and the consolidation of the corporation with any other corporation then existing or that might thereafter be organized. She therefore contemplated that these changes might occur and that the Real Estate Title and Trust Company might be consolidated with some

other corporation such as the Chicago Title and Trust Company, and that it would thereby cease to exist and become a component part of a new corporation. A consolidation took place and a new corporation was created from the original corporations, with an enlarged capital stock and unimpaired franchises. The appellee was entitled to execute the trust   *   *   *". pp. 35, 36.

The appellate court of Indiana later construed the statute in *Bible Institute Colportage Ass'n v. St. Joseph B. & T. Co.*, 118 Ind.App. 592, 75 N.E.2d 666, where the testatrix left the residue of her estate in trust to the Bible Institute Colportage Ass'n of Chicago for the "publication and dissemination of Evangelical Christian literature". Prior to the testatrix's death, a merger occurred between Colportage and the Moody Bible Institute. The name of the new corporation was Moody Bible Institute. The court affirmed the ruling of the trial court, holding that the Moody Bible Institute had the power to execute the trust established in the residuary clause of testatrix's will. The court cited *Zinser* stating that the expressed intention and charitable purpose of the testatrix could be carried out by the new corporation. Although the former corporations in *Zinser* and *Bible Institute* ceased to exist as separate entities following mergers with other corporations, certain powers belonging to the former corporations were found to be maintained by the new ones.

In *First National Bank v. King Edwards Hospital Fund*, 1 Ill.App.2d 338, 117 N.E.2d 656, the court considered the construction of provisions of a charitable trust. The will provided for bequests to four different hospitals in England. Following the death of the testator, the hospitals were nationalized. In determining whether the bequest to the hospitals failed, the court stated that the test was whether the charitable purpose of the gifts could be fulfilled. This was answered in the affirmative. The court reasoned that the hospital after nationalization was still functioning as a hospital, serving substantially the same people, and furnishing the same kinds of services. The court stated at page 352 of the opinion, "*   *   *   In no substantial sense can it be said that the hospitals have ceased to exist.   *   *   *." The reasoning in the above case is applicable here. After the merger, Passavant was still functioning as a hospital furnishing the same services to the same group of people served by Holy Cross Hospital. In no substantial sense had Holy Cross Hospital ceased to exist although it functioned under a new management.

In the case of *In re Hagan's Will*, 234 Iowa 1001, 14 N.W.2d 638, the supreme court of Iowa considered the construction of a will where the testatrix had left the remainder of her estate in trust to Drake University and Penn College. Testatrix further provided, "should either Drake University or Penn College cease to exist, the income from said trust fund

shall be turned over to the surviving institution for the purpose above set forth * * *". Penn College experienced financial difficulties following the Depression. In 1933, Penn College leased its property to a new corporation named William Penn College, which assumed management and control of the institution. The trial court held that Penn College ceased to exist on June 5, 1933 at the time of the new incorporation; thus, Drake was to receive the portion designated for Penn College. In reversing the decision of the lower court, the court found that "ceased to exist" meant "cease to exist as an educational institution." Penn College had not ceased to exist as an educational institution. The change in name was not important nor was the fact that a new corporation had taken over legal title and business management of the college. (See also *Wesley Home, Inc. v. Mercantile Safe Deposit & Trust Co.*, 289 A.2d 337; *In re Estate of Daley*, 433 P.2d 296; and *Bell v. Carthage College*, 103 Ill.App.2d 289, 243 N.E.2d 23.) Similarly, the structural and management changes in Our Saviour's case are not important in determining Passavant's ability to carry out the purposes of the bequest. We find the case of *Curators of University of Missouri v. University of Kansas City*, 442 S.W.2d 66, neither persuasive nor binding on this court. However, the dissent in the *Missouri* case followed the reasoning in *In re Hagan's Will*.

■■ The cardinal rule of construction is to ascertain the intention of the testator from the will as a whole and to give effect to it, unless the intention is contrary to law or public policy. (*Martin v. Martin*, 273 Ill. 595, 113 N.E. 150.) Barbara Ammott Fuller was born in Kampsville, Illinois in 1873 and retired there in 1941. Testatrix's husband had been a patient at the Jerseyville Community Hospital, and testatrix had been a patient in the Holy Cross and Boyd Memorial hospitals, although she had never lived in the communities in which these hospitals were located. During the time Holy Cross was named Our Saviour's Hospital, testatrix and her husband had been patients there. There is testimony in the record indicating that preceding her death at the age of 94, testatrix was very alert and must have known of the intended merger of the hospitals since it was announced while she was a patient at Holy Cross.

■■ The court found that "testatrix did not intend the residue of her estate to be limited by any organizational structure, but rather it was her desire that the major portion of her estate should be used for general hospital purposes. The ultimate essence of her gift was the alleviation of human suffering and her will was designed accordingly. If she had intended any restrictions of her gift, she would have said so." It is indeed a reasonable assumption that the testatrix knew of the merger plans and could have changed her will accordingly since she had added

codicils on two occasions. The purpose of the residuary bequest can be accomplished by the institution operating now as Passavant Memorial Hospital. The decision of the trial court directing that one-third of the residue of the estate bequeathed to Our Saviour's Hospital pass to Passavant Memorial Area Hospital Association should be and is affirmed.

Judgment affirmed.

SMITH and SIMKINS, JJ., concur.