These consolidated cases involve the interpretation of a will. Mrs. Jule Brightwell's will, dated December 5, 1962, makes several substantial specific bequests to charitable organizations, including Montgomery Tuberculosis Sanitorium, which was reincorporated in 1973 as Greil Memorial Hospital.[1]
The trial Court held that the change of identity and purpose of the named beneficiary caused this legacy to lapse and that the lapsed legacy goes to the remaining residuary legatees and not to the next of kin. The pertinent terms of the will read:
"VIII
 "I make the following bequests to charitable institutions:
 "1. To the First Presbyterian Church of Montgomery, Alabama, the sum of Ten Thousand ($10,000.00) Dollars.
 "2. To the Montgomery Tuberculosis Sanitorium, the sum of Five Thousand ($5,000.00) Dollars.
 "3. To the Working Women's Home, Montgomery, Alabama, the sum of Five Thousand ($5,000.00) Dollars.
 "4. To the Montgomery Spastic Children's Association, the sum of Ten Thousand ($10,000.00) Dollars.
 "5. To the Patty G. Upchurch Trust Fund, for the use and benefit of the Children's Protective Association, Inc., of Montgomery, Alabama, the sum of Five Thousand ($5,000.00) Dollars."
"IX
 "All the rest and residue of property owned by me at the time of my death, every kind and character, real, personal, and wherever situated, I give, devise and bequeath, subject to the payment of debts, administration expenses, taxes and other claims against my estate as hereinafter provided, in equal parts, share and share alike, to the following charitable institutions:
"1. Montgomery Tuberculosis Sanitorium.
"2. The Working Women's Home, Montgomery, Alabama.
"3. Montgomery Spastic Children's Association.
 "4. Patty G. Upchurch Trust Fund, for the use of the Children's Protective Association, Inc., of Montgomery, Alabama.
 "5. The Presbyterian Home for Children, Talladega, Alabama.
 "6. The Alabama Institute for the Deaf and Blind, at Talladega, Alabama.
 "It is my will and I direct that the devise and bequest of said residuary estate is subject to the payment of any and all debts which are owed by me at the time of my death, administration expenses, estate or inheritance taxes, and to any and all other lawful charges against my estate, which I direct shall be paid out of the residue of my estate herein referred to."
There are two sets of Appellants: 1) Greil Memorial Hospital; and 2) the Nicrosis, heirs-at-law of Mrs. Brightwell. Greil Memorial, claiming error in the Court's finding that its legacy lapsed, contends that the unqualified bequest is still valid irrespective of the change of name of the beneficiary. The Nicrosis agree with the trial Court's holding that Greil Memorial's legacy lapsed, but contend that these bequests should now go to the heirs-at-law and not according to the residuary clause. We reject the contentions of both sets of Appellants and affirm the judgment below in all its aspects. *Page 780 
 I. The Lapse Issue
While we agree with Appellees' characterization of the case as one of first impression, the basic principles that govern this issue are quite well settled. We preface the discussion of these principles and their application to the instant case with a brief statement of the undisputed facts.
The Anti-Tuberculosis League of Montgomery was incorporated on June 24, 1911, pursuant to Section 3613 of the 1907 Code, which required only a certificate stating the corporate name selected, the names of the trustees, and the length of time for which they were selected. On July 24, 1934, a constitution and bylaws were duly adopted, changing the name of the organization, and in 1944 the original charter was amended by providing the following sole purpose:
 "2. The purpose of this organization shall be to devise plans for combating tuberculosis in this City and County and generally by maintaining buildings for the treatment of sufferers, cooperating with County and City officials, and the County Board of Health in improving health conditions, and in such other ways as may appear to be advantageous in curing and preventing tuberculosis."
That the Testatrix had a particular interest in the Montgomery Tuberculosis Sanitorium, which operated a hospital for the treatment of tuberculosis, can be readily discerned from the fact that her father suffered from tuberculosis, was a patient at the Montgomery Tuberculosis Sanitorium for many years, and died there. In addition, Testatrix's brother, John Randolph, also suffered from tuberculosis.
By the year 1971, a drastic change developed in the method of treating tuberculosis. Whereas previously it was necessary to isolate patients and treat them in a sanitorium, the use of chemotherapy now made it possible to treat tubercular patients in a general hospital without risk of infecting other patients. Pursuant to the legislative enactment of T. 22, §§ 199 and 199 (1), all State aid to tubercular hospitals ceased, effective September 30, 1973. Until 1971, Montgomery Tuberculosis Sanitorium operated as a corporation in furtherance of its sole purpose as stated in its 1944 amendment, the cure and prevention of tuberculosis.
Its 1973 reincorporation, in Article 2, completely changed the objects and purposes of the corporation from those in effect at the time the will was executed. While the purpose of Montgomery Tuberculosis Sanitorium was limited to "curing and preventing of tuberculosis," the word "tuberculosis" is not mentioned in the Articles of Reincorporation. The reincorporation gave as one of the objects and purposes, to establish, maintain, and operate a general hospital, dispensary, and out-patient department, for medical and surgical aid, care, and treatment for persons in need thereof. Those hospital buildings were conveyed to the State (Alabama Mental Health Board) in 1974. Greil Memorial owns no hospital facility of any kind, and no funds have been spent for tuberculosis treatment since 1973. Greil Memorial Hospital is not conducting health programs and services for the community. It is not conducting educational programs for students in various health fields. So, since 1974, the general objects and purposes of Article 2 have not been carried out. Greil Memorial is acting merely as a conduit for the distribution of income to various nonprofit organizations, including the Boy Scouts, alcoholic programs, and similar worthy causes. Its current financial statement shows that its only assets were cash and certificates of deposit, with an income of $29,085.92, out of which $28,330.00 was contributed to individual charities chosen by Greil.
Here, as in all will interpretation cases, "[t]he intention of the testator is the polestar to guide a court in the construction of a will and, in arriving at the testator's intention, the court should consider the instrument as a whole and not construe any paragraph separately. Wilson v. Skelton,262 Ala. 504, 80 So.2d 633 (1955); Allen v. Maxwell, 249 Ala. 655, 32 So.2d 699 (1948); Smith v. Nelson, 249 Ala. 51,29 So.2d 335 *Page 781 
(1947)." Perdue v. Roberts, 294 Ala. 194, 198, 314 So.2d 280,282 (1975).
Our ascertainment of the testatrix's intention is further aided by our adoption and application of the following rule: A bequest to a charitable corporation, formed for a single charitable purpose, is a gift in trust for that purpose, and no specific words of trust are necessary to its creation if that intention clearly appears. See Gordon v. Central Park LittleBoys League, 270 Ala. 311, 119 So.2d 23 (1960).
The rule and its rationale are well stated in Wesley Home v.Mercantile Safe Deposit P. Co., 265 Md. 185, 289 A.2d 337
(1972):
 ". . . In the construction and determination of the legal effect of donations to charitable corporations, the objects and purposes for which a charitable institution was incorporated may be considered. That is true because a gift, donation, or bequest, by name, without further restriction or limitation as to use, to a corporation organized and conducted solely for charitable purposes, may be deemed to have been made for the objectives and purposes for which the corporation was organized."
See, also, American Bible Society v. American Tract Society,63 N.J. Eq. 219, 50 A. 67 (1901).
The Supreme Court of Pennsylvania, in In re White's Estate,340 Pa. 92, 16 A.2d 394 (1940), expressed the rule in succinct language:
 "A gift to a charitable or religious institution without stating the use to which it is to be put is a gift solely for the uses for which the institution was incorporated." In re White's Estate, 16 A.2d at 396.
Applying these rules of construction to the instant facts, we think it is inescapable that, by her bequest to Montgomery Tuberculosis Sanitorium, Mrs. Brightwell's intention was to benefit that corporation in the furtherance of its sole purpose of curing and preventing tuberculosis; and, thus, to give this bequest to Greil Memorial Hospital would do violence to the plain intent of the testatrix.
The basis for our holding is not the legatee's act of reincorporation nor its change of name. Mrs. Brightwell's unrestricted bequest to Montgomery Tuberculosis Sanitorium, expressing no specific purpose, would not be defeated even by a mere shift or alteration in its corporate activities. It is the total abandonment of its sole corporate purpose, which renders the reincorporated entity an entirely distinct and separate corporation, that thwarts the testatrix's intention and compels our holding that this legacy lapsed. Finding no error to reverse this aspect of the trial Court's ruling, we affirm.
 The Residuary Legatees/Heirs at Law Issue
We now turn to the second and final inquiry: Is the lapsed legacy controlled by the residuary clause or does it pass according to the laws of intestacy? Counsel for the heirs at law, Appellants as to this aspect of the judgment below, advance a persuasive argument which we quote in part from their brief:
"Section 43-1-7 of the Code of Alabama is explicit:
 "`All property not disposed of by will must be administered and distributed, as in case of intestacy. . . .'
 "This provision has been in our Code since 1852, and from the early cases of Denson v. Autrey, 21 Ala. 205, Bendall v. Bendall, 24 Ala. 295, and Banks v. Sherrod, 52 Ala. 267, to the more recent cases of Caldwell v. Caldwell, 204 Ala. 161, 85 So. 493, Trustees of Cumberland University v. Caldwell, 203 Ala. 590, 84 So. 846, Parrish v. Gamble, 234 Ala. 220, 174 So. 303, our courts have said that in view of this section, estates by implication to defeat the heirs at law of the testator are disfavored and must be based on clear evidence found in the Will itself and circumstances attending its execution, showing an intention on the part of the testator not only to deprive the heirs of their inheritance, but indicating who should take [citing, also, 36 ALR 2d 1117].
 "Bendall v. Bendall, supra, is perhaps the most positive expression of the law as *Page 782 
applied to our facts. Here the testatrix left her estate equally to A and B in trust for C. A and B predeceased the testatrix. On the bill to construe the Will since the testatrix had no next of kin, the Court held that the legacies to A and B lapsed and would have gone to the next of kin; there being none, they escheated to the State rather than going to the trustee for C."
We have carefully studied the referenced statute and each of the cited cases; and we believe our decision to uphold the trial Court's ruling against intestacy gives full effect to § 43-1-7 and completely accords with the "intent of the testatrix" rule of interpretation. Additionally, here, another much favored rule is brought into play and that is the rule that mandates a strong presumption against intestacy. SeeCrippled Children Foundation v. Cunningham, 346 So.2d 409 (Ala. 1977).
Mrs. Brightwell acknowledged her heirs at law by providing each of them with a specific bequest of $10,000. She included a residuary clause disposing of "All the rest and residue of [her] property" to six specifically named charitable organizations. Thus, her intent with respect to the heirs at law has been satisfied in full, and the passing of the lapsed legacy under the residuary clause prevents the operative effect of intestacy. Id. No specific intent on the part of Mrs. Brightwell to avoid intestacy need be found; this element is furnished by the rule of presumption against intestacy unless a contrary intention clearly appears. Certainly, one of the prime purposes of a residuary clause is to avoid the state of intestacy contemplated by § 43-1-7, whose language is directed solely toward "[a]ll property not disposed of by will."
We think the rule, as it relates to both aspects of these appeals, is well stated in Teele v. Bishop of Derry,168 Mass. 341, 47 N.E. 422, at 423 (1897): "[Where] the purpose which the testatrix had in view has failed . . . it follows that the bequest must be held to have failed and to pass under the residuary clause."
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES, EMBRY and BEATTY, JJ., concur.
BLOODWORTH, FAULKNER and ALMON, JJ., not sitting.
[1] Mrs. Brightwell died October 27, 1977, having been judicially declared mentally incompetent in 1967.