**FIRST TRUST COMPANY OF NORTH DAKOTA, Petitioner and Appellee,**

v.

**Marshall MAST, Naomi High, Juletta Mae McGwinn, Respondents and Appellees,**

**and**

**Winnifred Kopanger, Respondent and Appellant.**

**Civ. No. 10989.**

Supreme Court of North Dakota.

April 10, 1986.

Lanier, Knox, Olson & Racek, Fargo, for petitioner and appellee, First Trust Co. of North Dakota; argued by Frank L. Racek.

Serkland, Lundberg, Erickson, Marcil & McLean, Fargo, for respondents and appellees Mast and McGwinn; argued by Lowell W. Lundberg.

MESCHKE, Justice.

"The Kopanger's kept and left their land to their daughters: Muriel, Naomi, Juletta and Winnifred."

Winnifred thus summarizes the background of her pro se appeal of a judgment ordering partition of the 320 acre Kopanger farm among the daughters, making a lyrical plea to keep the Kopanger farm intact. Regrettably, the law grants us no poetic license to substitute a different plan of devolution for the one left by her parents. Therefore, we affirm the judgment of partition.

Joseph and Selma Kopanger raised four daughters on their half-section farm in the Red River Valley. Three married and moved to other states with their families. After a career as a nurse in the armed services, Winnifred returned and stayed with her parents as they aged and died. When Joseph died, Selma, as the surviving joint tenant, continued to rent out the farm land while living on the homestead with Winnifred. Unfortunately, neither Joseph nor Selma took estate planning steps to keep the farm intact for Winnifred's benefit before distribution to their absent daughters. So, when Selma died intestate, the four daughters received equal shares in the farm.

Sibling disagreement arose. The sisters apparently sought greater economic return from the farm land. Winnifred, feeling in tune with her father's beliefs and practices, sought tenants to farm without the modern

chemicals and fertilizers that she feels adversely affect the land and environment.

First Trust, as personal representative of Selma Kopanger's estate, was caught between conflicting desires of the heirs and petitioned for partition as authorized by N.D.C.C., § 30.1–20–11:

> *"Partition for purpose of distribution.* When two or more heirs or devisees are entitled to distribution of undivided interests in any real or personal property of the estate, the personal representative or one or more of the heirs or devisees may petition the district court prior to the formal or informal closing of the estate, to make partition. After notice to the interested heirs or devisees, the district court shall partition the property in the same manner as provided by chapter 32–16. The district court may direct the personal representative to sell any property which cannot be partitioned without prejudice to the owners and which cannot conveniently be allotted to any one party."

One sister and a nephew (assignee of one sister) responded by requesting partition into four equal eighty-acre pieces. The third sister recognized that there might be differences in values between the four eighty-acre tracts. Winnifred did not respond to the petition for partition.

A referee appointed by the district court concluded that partition of the Kopanger farm could be made and recommended division into four eighty-acre parcels, with payment of some cash compensations ("owelty") between the recipients. *See* N.D.C.C., § 32–16–41. Winnifred was designated to get the "home" eighty, subject to paying $675 to the sister receiving the lowest valued eighty. Winnifred appeared and objected to the partition, but the trial court adopted the referee's report and entered judgment of partition accordingly.

Winnifred hopefully suggests: "There must be a way." But, her most substantial suggestion ("It could be called a DRAW and no lawyer would have lost his case") seems simply whimsical. On the other hand, on the limited record before us, we cannot help but wonder why her parents did not establish a trust of the Kopanger farm to benefit Winnifred for her lifetime, prior to distribution and division among her absent sisters or their families. Additionally, we wonder why the sisters were unable to arrive at a "private agreement" in the estate to accomplish the same objective; *see* N.D.C.C., § 30.1–20–12.

While the *cy-pres* doctrine has sometimes been used to reform a charitable gift to carry out a decedent's main intention, *see Mercy Hospital of Williston v. Stillwell,* 358 N.W.2d 506, 509 (N.D.1984), we are unable to find leeway in that equitable doctrine to rewrite a decedent's distribution to her heirs. Thus, like the trial court, we must apply settled law.

Partition is a matter of right between cotenants; N.D.C.C., § 32–16–01. Partition in kind is preferred. *Schnell v. Schnell,* 346 N.W.2d 713 (N.D.1984).

Winnifred appealingly describes both her love of the land and her fond memories of her forebears. But, there are no apparent procedural deficiencies in these proceedings and we are unable to identify a legal reason to prevent partition.

Accordingly, we must affirm.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.